DITTER, J.,
— This case comes before the court on an appeal from a five-day suspension of a restaurant liquor license. The suspension was based upon a citation which charged that alcoholic beverages had been served on Sunday in violation of the applicable provisions of the Liquor Code.
As a result of a hearing before the court and the record of the proceedings before the board, the following findings of fact are made:
1. Appellant, G-K Bar Corporation, 43 South York Road, Hatboro, Montgomery County, Pa., is the holder of a restaurant liquor license issued by the Pennsylvania Liquor Control Board.
2. On March 13, 1967, the board issued a citation to show cause why that license should not be revoked on the grounds that appellant had sold, furnished and/or given certain persons alcoholic beverages on Sunday, January 15, 1967, after 2 a.m.
3. Following a hearing before the board, an opinion and order were filed finding appellant guilty of the alleged violation and suspending its license for five days.
4. Thereafter, G-K Bar Corporation filed an appeal alleging that the board’s order was not supported by either the law or the evidence.
5. At 2:20 p.m. on Sunday, January 15, 1967, Michael Iatesta, a police officer of Hatboro, entered the G-K Bar through an unlocked door. He observed four glasses, some shot glasses with liquor in them and a *495 beer glass, three-quarters full, on the bar. In addition, there was a $5 bill, a $1 bill, and some change on the bar approximately one foot away from the glasses.
6. Present at the time of the alleged violation were James Klinger, the president-manager of the bar; an employe who was cleaning the premises; a carpenter, a bar designer and a plumber. They were discussing ways and means by which the bar could be renovated and renovations were subsequently accomplished.
7. Klinger admitted giving drinks to the other men as a gesture of hospitality because they were helping him plan the renovations.
8. Officer Iatesta did not observe any sale of alcoholic beverages, nor was there any testimony that such a sale had taken place. The money lying on the bar had been placed there to get change for the purchase of cigarettes from a vending machine.
DISCUSSION
In cases involving appeals from an order of the Liquor Control Board, it is the duty of the court of common pleas to hold a hearing, make findings of fact and conclusions of law, and then exercise its discretion to sustain, reject, alter or modify the action that has been taken: Act of April 12,1951, P. L. 90, sec. 471, as amended, 47 PS §4-471. It is the duty of the board to establish violations of the code by a fair preponderance of the evidence: Speranza Liquor License Case, 416 Pa. 348, 351 (1965).
From the evidence, it is quite apparent that on the Sunday in question Klinger and the other men at the bar had met to discuss its renovation. There were blueprints on hand and the door was unlocked. The men present represented the trades that were necessary for the changes which were subsequently made. The men were not gathered in front of the bar, but were to the rear and in the kitchen. Officer Iatesta did not witness *496 any sale, and any circumstantial evidence that a sale had taken place is clearly insufficient.
The Liquor Code of April 12, 1951, P. L. 90, sec. 493(16), 47 PS §4-493(16), makes it unlawful for any licensee to give, furnish or serve any alcoholic beverage on days when he may not make a sale. This would, of course, include a Sunday afternoon. A similar provision was construed by the Supreme Court of Pennsylvania 75 years ago. Section 17 of the Brooks High License Law of May 13,1887, P. L. 108, declared that any licensed person who furnished intoxicating drinks on Sunday was liable to prosecution and punishment. The court ruled that a person could not be convicted under that provision for merely furnishing alcoholic beverages on Sunday as a matter of hospitality: Commonwealth v. Heckler, 168 Pa. 575 (1895). The present Liquor Code is the successor to the Brooks High License Law and its precedents are, therefore, controlling: Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552(4).
In the instant case, had Klinger and the men gone to Klinger’s house it could hardly have been argued that he violated the law by serving each of them a drink. We believe that the section of the Liquor Code which prohibits giving, furnishing and serving of alcoholic beverages by a licensee was intended to prevent the evasion of the law which forbids sales on Sunday and was not intended to make a private gesture of hospitality unlawful. Klinger’s providing a drink for each man present was not an attempt to evade the law but was a voluntary gesture of goodwill.
In Maitre’D, Inc. v. Pennsylvania Liquor Control Board, 88 Montg. 249 (1967), this court ruled that a shareholder of a corporate-licensee was not precluded from serving alcohol on Sunday at a private party held on the licensed premises. Klinger’s act was of a similar type except for the fact that the group was smaller.
*497 CONCLUSIONS OF LAW
1. The evidence did not support the finding that the G-K Bar Corporation sold any alcoholic beverage on Sunday, January 15, 1967, after 2 a.m.
2. The evidence did not support a finding that the G-K Bar Corporation gave, furnished, or served any alcoholic beverage in an attempt to evade the provisions of the Liquor Code which prohibit Sunday sales.
3. The evidence only supported a finding that John J. Klinger served alcoholic beverages to a small, private group as a gesture of hospitality.
4. The evidence did not warrant a suspension of appellant’s liquor license.
DECREE
And now, July 10,1970, the order of the Pennsylvania Liquor Control Board dated August 25, 1967, suspending liquor license No. R16070 issued to the G-K Bar Corporation is hereby reversed.